J-S14022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE C. DAYARD | : | |
| | : | |
| Appellant | : | No. 1652 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002832-2022

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                              **FILED JULY 15, 2025**

Maurice C. Dayard ("Dayard") appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, burglary, possession of an instrument of a crime ("PIC"), and terroristic threats.[1]  On appeal, Dayard challenges the trial court's denial of his motion for mistrial and the discretionary aspects of his sentence.  After careful review, we affirm.

On April 21, 2021, at approximately 1:00 a.m., Dayard broke into the off-campus apartment of A.D., an undergraduate student at the University of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121, 3123, 3502, 907, 2706.

the Sciences. He approached her bedside with a knife while she slept. Dayard woke A.D. and threatened to kill her if she screamed. For four hours, Dayard repeatedly raped and molested A.D. at knifepoint and forced her to perform oral sex on him twice. Dayard strangled A.D. during one of the rapes.

Between the abusive acts, Dayard forced A.D. to follow his personal Instagram account and questioned her about her sexual history and personal life. Dayard noticed a picture of A.D.'s boyfriend on her social media account and told A.D. that he had previously watched her boyfriend enter her apartment. Unbeknownst to A.D., Dayard first saw her leaving her university's campus a few weeks prior to the night of the assault and followed her back to her residence.

Dayard continued to sexually assault A.D. and coerced her into giving him her phone number and the passcode to her apartment door. Dayard told A.D. he would return to her apartment that weekend with friends to sexually assault her again. Dayard lowered his mask because he wanted A.D. to see his face and showed her the window in the utility closet he climbed through to enter her apartment. Dayard told A.D. that he would kill her if she told anyone about what he had done and left through the window around 5:00 a.m.

A.D. then washed her sheets to remove Dayard's scent and went to the drugstore to buy emergency contraceptive. A.D. disclosed the assault to her boyfriend later in the afternoon, and he encouraged her to contact the school. A.D. did, and then reported the incident to the police that evening.

A.D. recounted the details of the assault to police and provided Dayard's physical description and Instagram account name. The Instagram account contained a video with Dayard in a mask matching the description A.D. provided to the police. The account's subscriber records revealed Dayard's name and registered location. Police obtained Dayard's driver's license and matched the image to the account image. A.D. then picked Dayard's image out of a six-person photo array and police obtained a warrant for his arrest. Dayard fled to Canada, but the Royal Canadian Mounted Police apprehended Dayard on June 26, 2021, and extradited him to Philadelphia on March 16, 2022.

The case proceeded to a jury trial on November 14, 2023. At trial, A.D. identified Dayard and provided a factual description of her assault. The Commonwealth also presented DNA evidence attributable to Dayard taken from A.D.'s neck, personal email and IP addresses associated with Dayard that are linked to his Instagram account, and a knife discovered at Dayard's residence that A.D. recognized as the one he threatened her with on the night of the assault.

On November 20, 2023, the jury convicted Dayard of the above-listed crimes. On February 16, 2024, the trial court sentenced Dayard to an aggregate term of fifteen to thirty years in prison followed by three years of probation. The trial court also ordered Dayard to register as a tier III offender

under the Sex Offender Registration and Notification Act ("SORNA").[2] Dayard filed a post-trial motion, challenging the trial court's denial of his motion for mistrial based upon improper prosecutorial comments made during the Commonwealth's closing argument and the discretionary aspects of his sentence. The trial court denied the motion. This timely appeal followed.

On appeal, Dayard raises the following questions for our review:

1.  Did the prosecutor commit misconduct and improperly prejudice the jury by urging it to convict Dayard out of sympathy, to stand up for A.D. by giving her the "justice she deserves"?

2.  Are the individual sentences as well as the aggregate sentence of twenty-five to fifty years of incarceration manifestly excessive and unreasonable where the trial court exceeded the guidelines and imposed consecutive sentences while failing to properly consider Dayard's considerable mitigation and capacity for rehabilitation?

Dayard's Brief at 3.

## **Motion for Mistrial**

Dayard contends that the trial court abused its discretion by denying his motion for a mistrial, which he raised during the prosecution's closing argument. Dayard argues that the prosecutor's statement to "stand up for A.D." and "render justice for A.D." conflated sympathy with credibility and that the trial court's curative instructions failed to negate the prejudicial effect of these statements because the instructions did not sufficiently distinguish the

_____

[2] 42 Pa.C.S. §§ 9799.10-9799.41.

issues. Dayard's Brief at 21, 22. He asserts that the statements improperly biased the jury and prevented him from receiving an impartial verdict and the trial court's denial of his request for a mistrial constitutes an abuse of discretion. *Id.* at 18, 22. According to Dayard, this was highly prejudicial, as the evidence of his guilt came solely from A.D. *Id.* at 19, 23; *see also id.* at 18-19 (noting there was no physical evidence of Dayard's presence in A.D.'s home). He seeks a new trial. *Id.* at 24.

"A mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial". *Commonwealth v. Lease*, 703 A.2d 506, 508 (Pa. Super. 1997). It is an "extreme remedy," warranted only where the "prejudice to the movant cannot be ameliorated to ensure a fair trial." *Commonwealth v. Risoldi*, 238 A.3d 434, 458 (Pa. Super. 2020). A mistrial is not warranted if curative instructions are adequate to overcome a prejudicial effect on the outcome of the trial. *Id.*

Further, as it pertains to the Commonwealth's summation, our Supreme Court has recognized that

> [a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict. While it is improper for a prosecutor to offer any

personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. The prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

*Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (citations, quotation marks, brackets, and ellipses omitted).

The record in this case reflects that Dayard's counsel's closing argument targeted the sufficiency of the evidence and the character and credibility of the victim:

I'm sure the Commonwealth is going to argue something like what did she have to gain from this, she got herself cross-examined in court, she got herself a rape kit, there's no benefit for her here. What else can you say once this gets legs? Once this hits the news? I made up a rape? You can't unwring [sic] that bell. You cannot unsay something like that; especially in a case like this where it is a young woman at a private university, high-priority case, I don't know how many times we heard that, and it hit the news. I mean, this isn't a process you can undo. Also, I think it is noteworthy that we have no burden to prove motive. And it's impossible to know why anyone lies; you have to have 100 psychiatrists to talk about that. I don't know. And that's not our job. The job is to look at the evidence, to look at the evidence critically and determine if the Commonwealth has proven the case beyond a reasonable doubt and they have not.

\* \* \*

Like I said, this trial has just been a parade of all of the evidence that the Commonwealth has, all the investigations and techniques that the Commonwealth can do, did do, and nothing came up and he's still sitting here. And she's going to get up and say find this young man guilty of rape by forcible compulsion, find this man guilty of strangulation, find this man guilty of burglary. He was scared for good reason.

N.T., 11/16/2023, at 119, 123.

In response, the prosecutor's closing argument centered on the sufficiency of the evidence and the credibility of the witness. ***See generally id.*** at 129-59. It emphasized the DNA evidence discovered on A.D.'s neck, the damage to A.D.'s window where Dayard entered the apartment, the knife discovered in Dayard's apartment that she recognized from the night of the incident, and Dayard's efforts to flee Philadelphia following the assault. ***Id.*** Relevantly, during the summation, the prosecutor stated the following:

> Did you see the long pauses and the deep breaths that she had to take in order to maintain a level of self-composure, a level of self-control, to be able to sit on that witness stand and answer hundreds of questions over the course of three hours to tell all of you about the most painful memories that she's had to live with for the past two and a half years? And then ask yourself - after thinking about all of that, ask yourself can you render justice for her? Can you render justice for A.D.?

> \*     \*     \*

> You have the power to make the right decision and to stand up for A.D. … You have the opportunity to hear her voice, to let her know that she deserves justice.

N.T., 11/16/2023, at 135-36, 159-60.

Dayard's counsel objected to the prosecutor's quoted statements and moved for a mistrial on the grounds that they amounted to emotional appeals that urged the jury to consider their verdict on something other than an evaluation of the evidence. ***Id.*** at 160. The prosecutor responded that the closing "talked about the importance of the evidence … and that they're to

evaluate all that evidence and render a verdict consistent with that evidence." *Id.* at 160-61. Dayard's counsel asked for a curative instruction. *Id.* at 161-62. The trial court granted that latter request, stating that it would "instruct the jury on the fact that they should not decide the case based on sympathy for the witnesses," including the victim. *Id.* at 162. Dayard's counsel found that to be satisfactory. *Id.* at 162-63.

Subsequently, the trial court instructed the jury as follows:

Let me remind you again that my job is to decide all questions of law. Your job is to decide the facts, and you will do this by examining the evidence. From that evidence and the logical conclusions which you can draw from that evidence, you will decide what the true facts are. As you go along, you should use the law that I give you and reach your decision as to whether the defendant is guilty or not guilty of each of the different charges brought against him.

Let me further state to you, that you should not base your decision on sympathy for or prejudice against the defendant or the crimes that have been charged or the witnesses, including the complainant, [A.D.] Certainly, do not base your decision on which attorney made the better speech or which attorney you happen to like better.

In determining the facts, you're to consider only the evidence that has been presented in court and the logical inferences that have derived from that evidence. Now, a fundamental principle of our system of criminal law is that a defendant is presumed to be innocent. The mere fact that he was arrested and is charged with crimes is not evidence of his guilt.

Furthermore, a defendant is presumed innocent throughout the trial unless and until you conclude based upon careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him. It is not the defendant's burden to prove that he is not guilty; instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes

charged and that the defendant is guilty of those crimes beyond a reasonable doubt.

The person accused of a crime is not required to present evidence or to prove anything in his own defense. If the evidence presented fails to meet the Commonwealth's burden, then your verdict must be not guilty.

N.T., 11/16/2023, at 163-65; *see also* Trial Court Opinion, 8/9/2024, at 17 (noting it "repeated[ly] instructed the members of the jury to base their decisions on the evidence presented at trial") (citing N.T., 11/16/2023, at 103-04; N.T., 11/14/2023, at 25). Dayard's counsel did not request a modification to the instruction or otherwise object.

As the trial court found, a majority of the prosecutor's closing argument "centered on the overwhelming evidence presented at trial, not on emotional appeals to the jury." Trial Court Opinion, 8/9/2024, at 17. To that end, the prosecutor's challenged statements did not mislead the jury and, in fact, were in direct response to Dayard's counsel's summation attacking the credibility of the victim. *See Commonwealth v. Judy*, 978 A.2d 1015, 1026 (Pa. Super. 2009) (denying a challenge for prosecutorial misconduct for bolstering the credibility of the witness to the jury because the contested statements are a "fair response to the defense argument" which degraded the character of the witness); *see also id.* at 1028 (noting a "prosecutor is permitted latitude to make argument with oratorical flair").

Further, the trial court's instruction sufficiently addressed the Commonwealth's burden of proof, informed the jury that the closing

arguments were not evidence, and stated that the jury should not base its decision on sympathy. *See Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997) (stating "any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury following closing arguments that none of the closing arguments were evidence and that the Commonwealth always bore the burden of proof"); *Commonwealth v. Fletcher*, 41 A.3d 892, 896 (Pa. Super. 2012) (juries are presumed to follow curative and cautionary instructions). Therefore, we conclude that the trial court did not abuse its discretion in denying Dayard's motion for mistrial. *See Commonwealth v. Powell*, 171 A.3d 294, 303 (Pa. Super. 2017) (concluding that trial court properly denied motion for mistrial based on prosecutor's statements during closing argument where the statements were a fair response to the defense's closing argument and the trial court provided an instruction detailing the Commonwealth's burden of proof and other instructions to mitigate any prejudice).

**Discretionary Aspects of Sentencing**

Dayard also challenges the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Baker,* 311 A.3d 12, 18 (Pa. Super. 2024) (citation omitted). To invoke this Court's jurisdiction, Dayard must satisfy the following four-part test:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Rivera***, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted). A substantial question is determined on a case-by-case basis and "exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. McCain***, 176 A.3d 236, 240 (Pa. Super. 2017) (citation omitted).

The record reflects Dayard filed a timely notice of appeal, properly preserved the issue in a timely post-sentence motion, and included the issue in a Rule 2119(f) concise statement. Dayard's claim that the trial court imposed an excessive sentence that only reflected the seriousness of his crime and did not consider any mitigating circumstances raises a substantial question. ***See Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa. Super. 2005) (holding appellant's argument that the trial court solely focused on the seriousness of his offense is contrary to the fundamental norms of the sentencing process and raises a substantial question).

Our standard of review of discretionary sentencing challenge is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Baker**, 311 A.3d at 19 (citation omitted).

If the trial court was presented with a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Miller**, 275 A.3d 530, 535 (Pa. Super. 2022) (citation omitted); **see also Rhoades**, 8 A.3d at 919 ("where the sentencing court had the benefit of a pre[]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation and quotation marks omitted).

> In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing …, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. § 9721(b).

> Where the trial judge deviates from the sentencing guidelines ... he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) (citation omitted).

Dayard contends that the trial court abused its discretion in imposing a manifestly excessive sentence on each of his convictions individually and in the aggregate. Dayard's Brief at 27. Dayard notes that the trial court imposed aggravated sentences for rape and IDSI and sentences above the aggravated guideline range (but below the statutory maximum) for burglary, terroristic threats, and PIC. *Id.* at 32. Dayard argues that in fashioning his sentence, the trial court failed to consider his childhood trauma, youth, and ability to be rehabilitated, and instead exclusively focused on the severity of the offenses. *Id.* at 31. Dayard also argues that, at sentencing, the trial court judge improperly engaged in comparative reasoning by stating that Dayard committed these crimes in a more serious way than the judge typically sees, depriving Dayard of an individualized sentence. *Id.* at 30.

The record reflects that the trial court judge reviewed a presentence investigation report, a sexual offender assessment board report, and sentencing memoranda submitted by both parties. N.T., 2/16/2024, at 4, 52. The judge stated on the record that it considered the sentencing guidelines, the protection of the public, Dayard's failure to accept responsibility, as well

as the nature of the crime and the manner in which it was committed. *Id*. at 52-65. The trial court also considered Dayard's rehabilitative needs, his mental health issues—including anxiety and depression—his age, the likelihood of his deportation, his efforts to obtain a GED in prison, his redeemability, and his difficult childhood spent in poverty in Haiti and subsequent abuse suffered in the United States' foster care system. *Id.* at 54-55, 56

The trial court went on to analyze each mitigating and aggravating factor in detail. *See id.* at 52-61. Following its comprehensive analysis, the trial court then provided the following explanation for the aggravated-range sentence:

> First, let me say this I think a lesser sentence than the sentence I'm imposing here today would diminish seriousness of the defendant's crimes and would not adequately protect the public or address the other statutory sentencing factors that I'm required to consider by law.
>
> I also believe that after consideration of all of the aggravating factors and the mitigating factors in this case, I think the aggravating factors outweigh the mitigating factors significantly.
>
> And let me say among those aggravating factors are the fact that the defendant committed his crimes in ways that extend significantly beyond the elements of the offenses.
>
> Not only did he rape the victim, but he raped her repeatedly and over the span of approximately four hours. In doing so subjected her to trauma that extends well beyond the substantial trauma seen in more typical cases.
>
> I've presided over a significant number of rape cases. And I think the manner in which the defendant committed a rape in

this case, and the other crimes in this case, is unusual and extend beyond what I've seen in many other cases in a way that aggravates the nature of his criminal conduct.

I think it aggravates the impact on the victim as compared to other cases. We're talking about the rape of a stranger who awoke in her home in her bed by seeing the defendant at her bed holding a knife to her throat. Someone she had never seen before.

The horror of that situation, the trauma that flows from that situation I think goes beyond what I typically have seen with a traditional case.

All rape cases are very serious cases. And those are very serious crimes. But what I've seen here with the evidence in this case is even more egregious. [Dayard] terrorized the victim in other ways that make this case different than many others.

He told the victim that he had stalked her for weeks. He broke into her apartment, as I said, awaking her by knife point to her throat.

He also attempted to evade apprehension and avoid taking responsibility for his crimes by fleeing Philadelphia and entering into Canada.

And then when he was removed from Canada, after crossing the border illegally, he fled back into Canada, and in doing so he repeatedly lied to law enforcement. He also instilled terror in his victim even after he left her apartment by threatening to return and kill her if she told anyone about his crimes.

He really showed a complete disregard for the humanity of his victim. I incorporate all the other aggravating factors and my discussion of the mitigating factors in my discussion here.

And I conclude that again the aggravating factors in this case outweigh the evidence of mitigation and justify the imposition of consecutive sentences in both the aggravated guidelines range and above that range.

*Id.* at 63-65; *see also* Trial Court Opinion, 8/9/2024, at 21-25, 20-21 (noting it considered various mitigating factors in imposing the sentence, including Dayard's tumultuous upbringing, mental health issues, and lack of prior criminal convictions, and found they did not outweigh the aggravating factors, including his depravity and disregard for humanity, that present a substantial risk to the public).

We find no basis to conclude that the trial court abused its discretion when sentencing Dayard. Given that the trial court had the benefit of a presentence investigation report, we presume that it was aware of, and considered, all relevant sentencing factors. *See Miller*, 275 A.3d at 535. Further, as noted above, the trial court expressly stated its consideration of the mitigating factors Dayard claims it ignored. *Id.* at 52-65. Upon its consideration of both the aggravating and mitigating circumstances, the trial court judge stated that "the aggravating factors outweigh the mitigating factors significantly." N.T., 2/16/2024, at 63. The trial court is well within its discretion to determine that the risk Dayard presented to the public at large outweighs the mitigating circumstances. *See Baker* 311 A.3d at 19 (noting that "the weight accorded to the mitigating factors of aggravating factors presented to the sentencing court is within the court's exclusive domain"). Therefore, we conclude that the trial court did not abuse its discretion in imposing the sentence. *See Miller*, 275 A.3d at 535.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/15/2025